UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ANN C. KLIETHERMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:17-CV-2604-ERW |
| ) | |
| NANCY A. BERRYHILL, ) | |
| **Acting Commissioner of Social Security** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the application of Ann Cecelia Kliethermes ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.* and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (ECF 15), Defendant has filed a brief in support of the Answer (ECF 20), and Plaintiff has filed a reply brief (ECF 21).

**I. PROCEDURAL HISTORY**

Plaintiff filed her applications for DIB and SSI under Titles II and XVI of the Social Security Act on January 15, 2014 (Tr. 193-205). Plaintiff was initially denied relief on April 17, 2014, and on June 3, 2014, she filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 83-94, 104-108). After a hearing, by a decision dated August 31, 2016, the ALJ found Plaintiff was not disabled (Tr. 22-33). Plaintiff filed *Request for Review of Hearing Decision* on September 2, 2016 (Tr. 18). On August 15, 2017, the Appeals Council denied Plaintiff's request for review (Tr. 1-5). Plaintiff appealed to the United States District Court for

the Eastern District of Missouri on October 18, 2017 (ECF 1). As such, the ALJ's decision stands as the final decision of the Commissioner.

**II. DECISION OF THE ALJ**

The ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2006, and Plaintiff has not engaged in substantial gainful activity since January 1, 2003, the alleged onset date of her disability (Tr. 24). The ALJ found Plaintiff has the severe impairments of bipolar disorder and obsessive-compulsive disorder (Tr. 24). The ALJ found no impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 250).

The ALJ conducted a hearing with Plaintiff, her counsel, and a vocational expert on July 15, 2016 (Tr. 42). At the beginning of the hearing, the ALJ noted that Plaintiff had concurrent claims, but she never testified at a hearing for the prior claim (Tr. 42-44). Plaintiff had also received benefits for a period of time prior to the hearing with an onset date of December 26, 1994 (Tr. 45-46). The benefits terminated in approximately early 2001 (Tr. 45-46).

At the hearing, Plaintiff testified she lost her brother and a lot of Plaintiff's issues are associated with that "very tough" loss (Tr. 49). Plaintiff lives with her elderly parents who were devastated by the death (Tr. 49). Plaintiff worked as a Registered Nurse at Cardinal Glennon Children's Hospital in Saint Louis from 1980 to approximately 1984 or 1985 (Tr. 29). After leaving Cardinal Glennon, plaintiff moved to California where she worked in a children's hospital until she got pregnant (Tr. 49-50). When Plaintiff was 25 years old, she gave up her daughter for adoption (Tr. 50). Plaintiff testified that as a result of the adoption, she has slowly "gotten more isolated" (Tr. 51). Following the adoption in the mid-1980s, Plaintiff returned to Saint Louis and worked part-time at DePaul Hospital as a psychiatric nurse (Tr. 51). Following

2

her time at DePaul, Plaintiff worked as a homecare nurse (Tr. 51-52). Plaintiff lived on her own from 1983 to 1995, at which point she gave birth to a daughter and moved in with her parents (Tr. 52-53). Plaintiff testified she is prevented from working because of her depression and anxiety (Tr. 54-55). Plaintiff has not been taking her medication as prescribed because her Medicaid was discontinued despite her attempts to reapply for beneifts (Tr. 55). Lithium is the only prescription Plaintiff is currently taking (Tr. 56). In July 2014, Plaintiff spent a few a few days in Arizona at the Arizona Care Center and then the Sunshine Home (Tr. 58). Plaintiff testified her anxiety is caused by social situations, being heavier and older, not having any money for things, needing to clean up her living space before her parents downsize, she has to find a new place to live, and her daughter taking a road trip to Kansas alone (Tr. 59). Plaintiff has a cat named Charlie (Tr. 60). Plaintiff has a drivers license with a glasses restriction (Tr. 61). Plaintiff was in counseling but since the discontinuation of her Medicaid, she can no longer afford to attend counseling (Tr. 63). Plaintiff only socializes a little, leaves the house only once or twice a week, showers approximately once or twice a week, and does not sleep well. She sleeps on the couch in the living room, because her room is "really messed up" (Tr. 64-65). Plaintiff helps with household chores including cleaning, dishes, cooking and errands (Tr. 65). Plaintiff's nursing license has been inactive since approximately 2009 (Tr. 69).

The vocational expert, Delores Elvira Gonzalez, testified Plaintiff cannot perform any of her past work; however she is able to work as a Cleaner II, a lab equipment cleaner, and a machine feeder (Tr. 77-78). She is not able to do tandem tasks[1] (Tr. 77).

After considering the entire record, including Plaintiff's testimony, the ALJ determined Plaintiff has the Residual Functioning Capacity ("RFC") to perform a full range of work at all

---

[1] The ALJ defined tandem tasks as tasks which "requiring work from one person to transfer to the next person, either to the claimant or away from the claimant" (Tr. 77).

3

exertional levels, but with limitations (Tr. 26). Plaintiff is limited to noncomplex, non detailed tasks, with only occasional interaction with the public and supervisors. She can have only occasional interaction with co-workers, not involving tandem tasks (Tr. 26). The ALJ found Plaintiff is unable to perform any past relevant work[2] (Tr. 31). The ALJ found there are jobs which exist in significant numbers in the national economy Plaintiff can perform, including Cleaner II, lab equipment cleaner, and machine feeder (Tr. 32). Thus, the ALJ's conclusion for Plaintiff was "not disabled" (Tr. 32). Plaintiff appeals, arguing the ALJ failed to properly consider the opinions of Plaintiff's treating psychiatrist and failed to properly consider Plaintiff's impaired reliability when making a determination of the facts and reaching her conclusion (ECF 15).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner must follow a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, first the claimant cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two, only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484

---
[2] Plaintiff's past relevant work includes work as registered nurse and in home health care (Tr. 31).

4

F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is *per se* disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3.

"The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart,* 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by

substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record *de novo*. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough, so a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises two main issues. First, Plaintiff asserts the ALJ erred by failing to properly consider the opinion evidence of Plaintiff's treating physician, Dr. Rashmi Nakra. Second, Plaintiff argues the ALJ specifically erred when analyzing the factors of support and consistency to determine the weight to given to Dr. Nahra's opinions. For the following reasons, the Court finds the ALJ's determinations are based on substantial evidence.

### A. The ALJ erred in assessing the opinion of Dr. Nakra.

Plaintiff contends the ALJ erred when she failed to properly consider the March 2015 opinion evidence of Plaintiff's treating physician, Dr. Nakra. Specifically, Plaintiff argues the ALJ considered only the factors outlined in the regulations to give a treating physician's opinion "controlling weight" and failed to consider the additional factors outlined in the regulations when an ALJ assigns a treating physician's opinion less than "controlling weight".

Medical opinions are given weight according to the guidelines outlined in the Title 20 of the Code of Federal Regulations for claims filed before March 27, 2017.[3] *See* 20 C.F.R § 404.1527.[4] More weight is given to medical opinions from treating sources. *Id.* If a "treating source's medical opinion on the issue(s) of the nature and severity of [an] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [Plaintiffs] case record, we will give it controlling weight." 20 C.F.R. § 404.1527. If the opinion is not given controlling weight, factors

---
[3] Plaintiff filed her original claim in 2014, therefore the court is using the evaluation standard for claims filed before March 27, 2017.
[4] While Plaintiff is seeking recovery on both Title II and XVI claims, the relevant regulatory language is the same.

including length of treatment relationship and frequency of examination, nature and extent of the treatment relationship, supportability, consistency, specialization and other factors brought to the attention of the ALJ are considered. *Id.* at (c). "If a treating physician's opinion is not given controlling weight, then the ALJ must review various factors to determine how much weight is appropriate." *McRoberts v. Berryhill*, No. 4:17 CV 1447, 2018 WL 2335746, at *9 (E.D. Mo. May 23, 2018) *citing Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016). The ALJ is required to "give good reasons" for the weight given to a treating sources medical opinion. 20 C.F.R. § 404.1527(c)(2).

On March 18, 2015, Dr. Nakra submitted a Medical Source Statement which stated Plaintiff had no limitations with regards to functioning independently, behaving in an emotionally stable manner, relating to family, peers or caregivers, and maintaining socially acceptable behavior (Tr. 376). Dr. Nakra indicated Plaintiff only had moderate[5] limitations in adhering to basic cleanliness standards and asking simple questions or requesting help (Tr. 376). Plaintiff had no marked or extreme limitations in either her activities of daily living or social functioning (Tr. 376). Dr. Nakra went onto indicate Plaintiff could not perform in proximity to coworkers, could not perform for supervisors without insubordinate behavior, and could not perform in a setting with any contact with the general public (Tr. 376). Additionally, Plaintiff could only focus for five minutes and would be unproductive 31% or more below average at work with at least three missed days of work a month (Tr. 377). The ALJ acknowledged Dr. Narka is a treating medical source (Tr. 29, 378).

Using Dr. Nakra's Medical Source Statement, Plaintiff's own testimony, and other medical evidence and documentation submitted for review, the ALJ determined Plaintiff has

---

[5] A moderate limitation is a limitation which is significant and more than minimal, but the individual retains the ability to perform the activity satisfactorily approximately two thirds of the time (Tr. 376).

medically determinable impairments which could reasonably be expected to cause the alleged symptoms, but her statements regarding intensity, persistence, and limiting effects are not consistent with the medical evidence (Tr. 29).

The ALJ gave Dr. Nakra's Medical Source Statement and opinion weight only "to the extent it is consistent with his treatment notes and the records from other treating sources" (Tr. 30). The ALJ points out it is unclear on what Dr. Nakra's opinion is based because his treatment records do not support the limitations he indicated on the statement (Tr. 30). Additionally, the ALJ notes Dr. Nakra's opinion and Medical Source Statement does not address the key issues of Plaintiff's noncompliance with her medical treatment and her subsequent hospitalizations (Tr. 30).

Plaintiff argues the ALJ's analysis and assignment of weight for Dr. Nakra's opinions do not follow the requirements set forth in *Papesh,* because the ALJ did not articulate specifically each factor she considered when determining the weight to assign a treating physician's opinion. In *Papesh*, the Eighth Circuit found that the ALJ erred by failing to give substantial weight to the opinions of two treating physicians. *Papesh v. Colvin*, 786 F.3d 1126 (8th Cir. 2015). The Court stated the ALJ erred by failing to offer any basis for giving his opinion "non-substantial weight," and the ALJ incorrectly found the treating physician's opinion was inconsistent with the record where the only contradictory opinion came from a non-examining source. *Id.*

In May 2018, *McRoberts v. Berryhill* distinguished *Papesh* stating "*Papesh* does not compel a finding that the ALJ erred in finding [the treating physician's] opinion was not entitled to substantial weight. To the extent that plaintiff suggests that *Papesh* stands for the proposition that the ALJ must explicitly address the regulatory factors, the Court [in *McRoberts*] disagrees." *McRoberts v. Berryhill*, No. 4:17 CV 1447, 2018 WL 2335746, at *9 (E.D. Mo. May 23, 2018).

9

In the present case, Dr. Nakra's opinion was given weight according to the extent to which it was consistent with his treatment notes and the records from other treating sources (Tr. 30). Unlike in *Papesh*, the ALJ did not entirely discount Dr. Nakra's opinion because of one contradictory medical opinion, but rather, gave it weight based on its inconsistencies with his own treatment notes and the records from other treating sources.

As the Court in *Papesh* stated, "a treating physician's opinion may have 'limited weight if it provides conclusory statements only, or is inconsistent with the record.'" Id. Dr. Nakra's opinion provided conclusory statements and was inconsistent with the record; therefore the ALJ did not err in giving the opinion less than controlling weight.

### B. The ALJ erred in analyzing the factors of support and consistency for Dr. Nakra's opinion.

Plaintiff argues the ALJ erred when considering the factors of "support" and "consistency," when the ALJ analyzed Dr. Nakra's medical opinions. Specifically, Plaintiff contends Dr. Nakra's medical opinions were supported by his treatment notes, and other medical evidence of Plaintiff's reliability was consistent when evaluated with the number of days Plaintiff was in a psychiatric hospital. Defendant agrees with Plaintiff's arguments on the effects of poor attendance on the ability to maintain employment, however, Defendant argues Plaintiff's noncompliance with treatment is the cause of her periods of decompensation[6] and extended hospital stays in 2013 and 2014.

The ALJ considered the entire record and determined the Plaintiff has the residual functioning capacity ("RFC") to perform work requiring a medium exertional level where she is

---

[6] "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4).

capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 32). Plaintiff argues the ALJ, in making her RFC determination, failed to take into account Plaintiff's inability to maintain normal workplace attendance by failing to provide an explanation for her conclusions. Specifically, Plaintiff argues her frequent hospitalizations would prevent her from attending work consistently enough to maintain any employment.

Plaintiff was hospitalized at CenterPoint Hospital from December 6-11, 2013 (Tr. 327-330). The physician, Dr. Bello Adejoh, stated Plaintiff "has not been very much compliant with care." On December 20, 2013, Plaintiff was admitted to the intensive care unit at Mercy Hospital St. Louis for intentional injection and overdose on multiple medications (Tr. 332-369). During the evaluation, Plaintiff admitted to "not taking any of her medications" since her time at CenterPoint earlier in December 2013 (Tr. 360). The next day, Plaintiff was admitted to the psychiatric unit where she was discharged on December 27, 2013 (Tr. 361-369). Plaintiff was again admitted to Mercy Hospital on May 7, 2014, and was discharged on May 19, 2014 (Tr. 382-386). Following her discharge, Plaintiff was sent to Arizona Care Center on May 19, 2014, where she remained for four days (Tr. 509-512). On May 23, 2104, Plaintiff returned to the emergency room where Plaintiff stated she had not been taking her medication (Tr. 392-415). She was transferred to CenterPoint, an outside behavioral health facility, where she remained until June 12, 2014. *Id.* By the time Dr. Nakra completed his opinion statement in March 2015, Plaintiff has been hospitalized for a total of 47 days in the prior fifteen months (*See* Tr. 377).

The ALJ did consider account Plaintiff's attendance limitations when making the RFC determination including statements such as "[t]he medical record is significant for the numerous instances of noncompliance. The claimant appears to have developed a pattern of not taking her

11

medications, being admitted to the emergency room or hospital, stabilizing, and then being discharged to repeat the cycle again. Each hospitalization record noted the claimant was not taking her medications" (Tr. 30). The ALJ noted Plaintiff had numerous inpatient stays in 2013 and 2014, but also notes these periods of decompensation were directly related to her noncompliance with taking her medication. There is no indication in the record Plaintiff would require lengthy absences other than for her noncompliance with treatment and taking her medications. Additionally, there is an absence of medical evidence regarding her hospitalizations prior to 2013 and Plaintiff testified she did not receive any treatment from 2003 to 2013 (Tr. 80).

"[A] claimant's noncompliance can constitute evidence that is inconsistent with a treating physician's medical opinion and, therefore, can be considered in determining whether to give that opinion controlling weight." *Chaney v. Colvin*, 812 F.3d 672, 679 (8th Cir. 2016) *citing Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010). The ALJ did, in fact, consider Plaintiffs issues with attendance at work when determining her RFC, but concluded given her medical records and testimony regarding her noncompliance with taking her medications, Plaintiff's hospitalizations were directly related to her noncompliance with taking her medications and therefore her attendance issues could be circumvented if Plaintiff was complaint with treatment (Tr. 30).

Plaintiff argues the ALJ erred in four additional ways when making her RFC determination. First, Plaintiff argues the ALJ erred because Dr. Nakra's medical notes describe Plaintiff as an unreliable source and specify her limited judgment and her time in sheltered environments with her parents, or in a facility, and therefore the ALJ should have considered Plaintiff as an unreliable source when making a RFC determination (Tr. 422, 433, 438, 443, 448-55, 458-60, 463-65, 468). Second, Plaintiff asserts the ALJ made a notation in her opinion indicating Plaintiff had little to no counseling without citing to a medical opinion which stated

Plaintiff required counseling. Third, Plaintiff argues the ALJ noted Plaintiff's reports of leaving her house in her opinion, without acknowledging the structured living environments Plaintiff lives in or the source of the information about Plaintiff's ability to leave the house (Tr. 29). Finally, Plaintiff contends the ALJ's opinion misstates the medical records when she used the label "bogus" and wrote the word "mild" in her opinion. "We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999). While Plaintiff contends Dr. Nakra's opinions are well supported, it is not the job of the Court to reweigh evidence, only determine whether the quantity and quality of evidence is enough so a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). There is adequate evidence in the record to support the ALJ's conclusions regarding Plaintiff's RFC.

Even if a court finds there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). There is substantial evidence and good reasons to support the ALJ's determination regarding Plaintiff's RFC.

## V. CONCLUSION

For the reasons set forth above, the Court finds substantial evidence on the record, as a whole, supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 22nd day of February, 2019.

*E. Richard Webber*
_____
**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**